UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAAHDI ABDUL COLEMAN,<br><br>    Plaintiff,<br><br>    v.<br><br>P. FIGUEROA,<br><br>    Defendant. | Case No. 1:15-cv-00109-AWI-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BE DENIED<br><br>(ECF NO. 56)<br><br>OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE DAYS |

## I. BACKGROUND

Saahdi Abdul Coleman ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action filed pursuant to 42 U.S.C. § 1983. This case now proceeds on Plaintiff's First Amended Complaint, filed on September 11, 2015. (ECF No. 20). Plaintiff's First Amended Complaint was screened and found to state a cause of action against Defendant Figueroa based on a violation of the First and Fourteenth Amendments for denial of access to the courts. (ECF Nos. 23 & 27). In allowing the claim to go forward, the magistrate judge and subsequently the district judge relied on allegations that Defendant Figueroa had falsely stated that Plaintiff's copy of his habeas petition had never been received by Defendant Figueroa (the sole law librarian for C-Facility during the relevant period), and that a federal court relied on that false statement in dismissing Plaintiff's habeas petition as time-barred.

On January 18, 2018, Defendant Figueroa filed a motion for summary judgment. (ECF

No. 56). Plaintiff filed his opposition (ECF Nos. 61, 62, 63, & 65), and Defendant Figueroa filed his reply. (ECF No. 64). On March 26, 2018, the Court held at status conference. (ECF No. 66). At the status conference, the Court heard arguments on the motion for summary judgment.

Defendant Figueroa's motion for summary judgment is now before the Court. For the reasons described below, the Court will recommend that the motion for summary judgment be denied.

## II. PLAINTIFF'S CLAIM

### a. Plaintiff's Allegations in the First Amended Complaint

In January 2006, a jailhouse lawyer at California Substance Abuse Treatment Facility ("CSATF") in Corcoran, California, completed Plaintiff's state petition for a writ of habeas corpus challenging his criminal conviction. Plaintiff was told that he had to file his petition in three state courts to exhaust his state remedies. Plaintiff contacted the law library for copies, and Defendant Figueroa told Plaintiff that he was only allowed one copy of the petition due to his indigent status. Defendant Figueroa also provided Plaintiff with a letter to the court explaining this restriction.

Plaintiff obtained his copy from Defendant Figueroa and copied portions of the petition himself. Plaintiff mailed the personal copy to his friend for copying, retained the original copy he made and sent the copy he obtained from Defendant Figueroa to the Sacramento County Superior Court on January 11, 2006.

On February 21, 2006, the court denied the petition as untimely. On March 20, 2006, Plaintiff filed a motion for reconsideration. On April 11, 2006, the motion was granted and the petition was denied on the merits.

Plaintiff then changed the cover page of his petition to reflect the California Court of Appeals and contacted Defendant Figueroa to obtain a copy. The request was granted and Plaintiff filed his petition in the California Court of Appeal on May 10, 2006. The petition was denied without comment on May 18, 2006.

Plaintiff explains that when an inmate submitted a "legal material" or "paging system"

request, procedure required the law librarian to check the documents submitted to ensure that they met the criteria for legal material. The law librarian then signs and dates the Trust Account Withdrawal portion of the request form approving the order.

From 2004 through 2006, Defendant Figueroa was the sole law librarian for C-Facility, where Plaintiff was housed, and was therefore the only person who could approve "legal material" or "paging system" requests. Every request submitted during this time was personally completed, processed, signed, and dated by Defendant Figueroa. Defendant Figueroa was also responsible for posting memoranda and therefore knew of the exhaustion requirement under the PLRA.

On May 23, 2006, CSATF was placed on lockdown and all inmates in C-Facility were confined to their cells. Without inmate workers, Defendant Figueroa would be the sole party responsible for processing requests. Defendant Figueroa instructed inmates to submit their paging system requests through institutional mail or their building officers, who would then deliver the requests to the law library.

On that same day, Plaintiff changed the cover page of his petition to reflect the California Supreme Court and submitted a paging system request to his building officer for forwarding to the law library. Plaintiff contends that his only copy of his petition was lost during this paging system request. On June 13, 2006, Plaintiff submitted an appeal requesting that his documents be found.

Given that Plaintiff had only changed the cover page, Plaintiff wrote letters on June 13, 2006, to the Sacramento County Superior Court and the Court of Appeal requesting a copy of his petition, or instructions on how to obtain a copy. Plaintiff did not receive a response from either court, so he filed three additional requests with the Sacramento County Superior Court on June 22, 2006, August 17, 2006, and November 11, 2006.

Also in June 2006, Plaintiff tried to contact a friend to obtain a copy. He also tried to locate evidence to help him recreate the petition.

On July 5, 2006, Defendant Figueroa responded to Plaintiff's appeal and wrote that the law library did not have any way to find lost legal documents that never made it to the law

library. Plaintiff filed a request for interview with the warden on July 21, 2006, but he did not receive a response.

In August 2006, Plaintiff received a letter containing an eyewitness affidavit. The envelope indicated that the letter was received by the prison mailroom in December 2005, and Plaintiff alleges that the letter was held by mailroom staff for over eight months. This letter informed Plaintiff that the friend to whom he had sent the petition for copying in January 2006 was dead. Had Plaintiff received the letter in December 2005, he would not have sent the petition for copying in 2006.

Plaintiff ultimately received copies of portions of his petition in November 2006. Plaintiff completed the missing portion of his petition by hand and filed it on November 14, 2006.

On January 19, 2007, Plaintiff filed his federal petition, along with a request for equitable tolling. On December 15, 2008, the court granted Respondents' motion to dismiss based on the 179-day delay between the California Court of Appeal denial and filing in the California Supreme Court.

Plaintiff alleges that Defendant Figueroa wrote a statement, which was filed in support of Respondents' motion to dismiss his federal petition, in which he falsely indicated that Plaintiff had not followed the proper procedure for sending legal documents to the law library. Plaintiff contends that Defendant Figueroa provided 2004 procedures to the court as exhibits, despite knowing that he changed the procedures in 2005, prior to the time Plaintiff's petition was lost.

Plaintiff contends that the injury in this action is this dismissal of his federal habeas petition. In the dismissal order of his habeas petition, the federal court ruled that Plaintiff was not entitled to equitable tolling for the 179-days it took him to file his petition with the California Supreme Court because (1) he could have easily recreated the petition with the copy of the petition he filed with the California Court of Appeals; and (2) the alleged loss of the petition by prison officials did not justify the delay because Plaintiff's own failure to follow the

procedures for obtaining copies contributed to the loss of the petition. In so ruling, the federal court relied on Defendant Figueroa's allegedly false statement.

In December 2008, after Plaintiff was transferred to Folsom State Prison, a flood in Plaintiff's cell destroyed his legal property.

In September 2010, Plaintiff received replacement copies of the appeals filed at CSATF. However, they were incomplete because they were missing the second and third level responses and exhibits. Plaintiff needed complete copies as evidence in his pending civil case, 1:06-cv-00836-AWI-SAB.

On September 9, 2010, Plaintiff requested complete copies of his appeals from the appeals coordinator at CSATF. He never received a response.

Plaintiff sent a subpoena to CSATF on January 4, 2011, requesting copies of the appeals. In September 2011, Plaintiff was transferred to High Desert State Prison. He had not received a response to his subpoena.

Plaintiff filed a request for a formal subpoena in this court on November 8, 2011.

On February 12, 2013, Plaintiff received an endorsed copy of his January 4, 2011, subpoena, along with replacement copies of all appeals filed at CSATF and additional documents related to the appeals.

Plaintiff contends that the related documents, which include a May 23, 2006, legal material request form signed by Defendant Figueroa,[1] were never given to him, and this establishes (1) that Defendants were responsible for the loss of the petition and delay of replacement copies; and (2) that Plaintiff was "defrauded" out of a fair habeas corpus proceeding.

Plaintiff further contends that on May 23, 2006, he followed the procedures set out by Defendant Figueroa in 2005. Plaintiff therefore concludes that Defendant Figueroa caused Plaintiff's injury because he provided false paging system procedures to the court. Plaintiff

---

[1] Plaintiff lists the other documents as June 2006 letters to the California Court of Appeals and California Supreme Court, a June 2006 response from the Sacramento County Superior Court, an August 2006 response from the California Court of Appeals, a June 2006 mishandled mail chrono, an August 2006 memo from the associate warden and paging system modification orders.

also alleges that Defendant Figueroa's actions were compounded by his false statement that he never received the documents (as his signature is on the May 23, 2006, legal material request form).

b. Plaintiff's Cognizable Claim

Magistrate Judge Dennis L. Beck[2] screened Plaintiff's First Amended Complaint on January 26, 2016, and found that "this action should PROCEED on Plaintiff's denial of access to the courts claim against Defendant Figueroa." (ECF No. 23, p. 10). Regarding that claim, the Court stated:

> In the prior screening order, the Court explained that Plaintiff had failed to set forth sufficient facts to show that Defendant Figueroa was the proximate cause of the dismissal of his habeas petition.
>
> In amending, Plaintiff has provided additional facts in an attempt to support a causal connection. He contends that Defendant Figueroa provided false information to the federal court, which ultimately led to the dismissal of his petition as untimely in December 2008. At the screening stage, the Court finds that Plaintiff's allegations are sufficient to state a denial of access claim against Defendant Figueroa.

(ECF No. 23, p. 7).

District Judge Anthony W. Ishii adopted the findings and recommendations on April 8, 2016, stating in relevant part, "the only claim remaining in this action is Plaintiff's contention that Defendant Figueroa provided false information to the court, which ultimately led to the dismissal of his habeas petition." (ECF No. 27, p. 3). See also ECF No. 41 (denying Defendant's motion to dismiss).

### III. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

a. Defendant's Position

Defendant moves for summary judgment on two grounds. First, Defendant argues that there is no evidence that Defendant personally acted to violate Plaintiff's constitutional rights. (ECF No. 56-2, p. 6). While Plaintiff alleges that Defendant lost Plaintiff's habeas petition and

---

[2] Judge Beck was the magistrate judge assigned to the case until September 8, 2016. (ECF No. 35).

then lied about whether it was received at the law library, Plaintiff has no evidence to support this assertion. "At the time of Plaintiff's complaint, Defendant Figueroa had no way of confirming whether or not Plaintiff's petition was copied and then returned. (DUF [Defendant's Statement of Undisputed Facts] 11.) He had no independent recollection of receiving Plaintiff's petition. (DUF 10.) He searched the law library to see if Plaintiff's petition was awaiting copying, and he was unable to find it. (DUF 14.) Having performed this search, Defendant Figueroa responded to Plaintiff's grievance honestly, stating that the law library had no way of locating documents that were never received by the law library. (DUF 15.) That ended Defendant's involvement in this matter. (Declaration of P. Figueroa at ¶ 5.)" (ECF No. 56-2, p. 6).

Additionally, Defendant argues that there is no evidence that Defendant was the person interviewed at the first level of review by Sergeant Morales. In the response to Plaintiff's appeal, "Sergeant Morales stated that he contacted the 'Facility IV-C Legal Librarian,' who provided a statement, but Defendant Figueroa was employed as a Library Technical Assistant." (Id. at 6-7). Additionally, "Defendant Figueroa has no recollection of being interviewed by Sergeant Morales regarding this appeal." (Id. at 7).

Moreover, Defendants argue that "Sergeant Morales was the staff member who indicated that Plaintiff did not follow the proper procedure in sending his legal documents to the law library (DUF 18), and it was *that* statement, and not any statement by Defendant Figueroa, that the habeas court relied upon in dismissing Plaintiff's petition in December 2008." (Id. at 7).

Finally, Defendant argues that he is entitled to qualified immunity because he did not violate Plaintiff's constitutional rights. (Id. at 8). But, even if he did, he is still entitled to qualified immunity because "[a] reasonable library technical assistant in Defendant Figueroa's position would not have known that responding to an appeal inquiry in July 2006 could possibly lead to the dismissal of a habeas petition in December 2008. Nor is there any case law that suggests that inadvertently losing an inmate's legal document could lead to an access-to-courts claim." (Id. at 9).

### b. Plaintiff's Position

Plaintiff alleges that he followed the proper procedures in asking for a copy of his habeas petition, and that his only copy of his habeas petition was received by Defendant. (ECF No. 61, pgs. 1, 5, & 51). However, Defendant lost Plaintiff's petition, and then stated both verbally and in writing that the law library cannot locate documents that never made it to the law library, implying falsely that Plaintiff had not in fact sent the petition to the law library. (Id. at 1). Defendant's false statements were later submitted to a court in support of a motion to dismiss Plaintiff's habeas petition, and the court relied on the false statements in dismissing Plaintiff's habeas case. (Id.). Plaintiff alleges that Defendant made false statements in documents that he knew would be relied on by a court. (Id. at 11).

Plaintiff also alleges that Defendant provided the wrong paging system procedures to Sergeant Morales in response to Plaintiff's inmate appeal. (ECF No. 61, p. 6).

Finally, Plaintiff alleges that Defendant "regularly authored memorandums and notices that were not supported by departmental regulations or policy." (Id. at 2).

### c. Legal Standard for Summary Judgment

Summary judgment in favor of a party is appropriate when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Albino v. Baca ("Albino II"), 747 F.3d 1162, 1169 (9th Cir. 2014) (en banc) ("If there is a genuine dispute about material facts, summary judgment will not be granted."). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). If the moving party moves for summary judgment on the basis that a material fact lacks any proof, the Court must determine whether a fair-minded jury could reasonably find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322. "[C]onclusory allegations unsupported by factual data" are not enough to rebut a summary judgment motion. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989), citing Angel v. Seattle-First Nat'l Bank, 653 F.2d 1293, 1299 (9th Cir. 1981).

In reviewing a summary judgment motion, the Court may consider other materials in the record not cited to by the parties, but is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001).

In judging the evidence at the summary judgment stage, the Court "must draw all reasonable inferences in the light most favorable to the nonmoving party." Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011). It need only draw inferences, however, where there is "evidence in the record… from which a reasonable inference… may be drawn…"; the court need not entertain inferences that are unsupported by fact. Celotex, 477 U.S. at 330 n. 2 (citation omitted). Additionally, "[t]he evidence of the non-movant is to be believed…." Anderson, 477 U.S. at 255. Moreover, the Court must liberally construe Plaintiff's filings because he is a *pro se* prisoner. Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010).

      d. <u>Legal Standard for Access to Courts Claim</u>

Under the First and Fourteenth Amendments to the Constitution, state inmates have a "'fundamental constitutional right of access to the courts.'" Lewis v. Casey, 518 U.S. 343, 346 (1996) (quoting Bounds v. Smith, 430 U.S. 817 (1977)); Phillips v. Hust, 477 F.3d 1070, 1075

(9th Cir. 2007), overruled on other grounds by Hust v. Phillips, 555 U.S. 1150 (2009).

To have standing to bring this claim, Plaintiff must demonstrate that he suffered an actual injury. Lewis, 518 U.S. at 351-52; Vandelft v. Moses, 31 F.3d 794, 798 (9th Cir. 1994). To succeed, Plaintiff must have been denied the necessary tools to litigate a nonfrivolous criminal appeal, habeas petition, or civil rights action. Lewis, 518 U.S. at 353-55 & n.3; Christopher v. Harbury, 536 U.S. 403, 415 (2002). Plaintiff must also show that he suffered an actual injury. This means Plaintiff must allege that he was prejudiced with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or present a nonfrivolous claim. Lewis, 518 U.S. at 349.

Plaintiff need not show that he would have been successful on the merits of his claims, but only that they were not frivolous. Allen v. Sakai, 48 F.3d 1082, 1085 & n.12 (9th Cir. 1994). A claim "is frivolous where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). The Ninth Circuit has emphasized that "[a] prisoner need not show, ex post, that he would have been successful on the merits had his claim been considered. To hold otherwise would permit prison officials to substitute their judgment for the courts' and to interfere with a prisoner's right to court access on the chance that the prisoner's claim would eventually be deemed frivolous." Allen, 48 F.3d at 1091 (footnote omitted).

e. Legal Standard for Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

In determining whether a defendant is entitled to qualified immunity, the Court must decide (1) whether the facts shown by plaintiff make out a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct. Pearson, 555 U.S. at 232.

To be clearly established, a right must be sufficiently clear "that every 'reasonable official would [have understood] that what he is doing violates that right.'" Reichle v.

Howards, 132 S. Ct. 2088, 2090 (2012) (quoting Al–Kidd, 563 U.S. at 741) (alteration in original). This immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

      f. <u>Analysis</u>

There are no evidentiary objections to the relevant evidence, and the facts are largely undisputed. The Court finds that, based on the undisputed facts, as well as the evidence presented, there is a genuine dispute of material fact as to whether Defendant was responsible for preventing Plaintiff from accessing the courts. Additionally, the Court finds that Defendant is not entitled to qualified immunity at this stage in the proceeding because the evidence provided by Plaintiff made out a violation of his constitutional right to access the courts, and this right was clearly established at the time of Defendant's conduct.

      *A. Defendant's Involvement in Denying Plaintiff Access to the Courts*

To begin, the Court finds that there is sufficient evidence to create a genuine dispute of fact as to whether Defendant was the librarian referenced in Sergeant Morales's response to Plaintiff's appeal. Defendant has submitted evidence that he was never a "Legal Librarian," (ECF No. 56-4, p. 3, ¶ 6), and Sergeant Morales did state in his response to Plaintiff's appeal that he spoke to the "Legal Librarian" (ECF No. 56-5, p. 24).

However, "Defendant admit[ed] that at all times relevant to Plaintiff's complaint, he was employed as a law librarian…." (ECF No. 42, p. 2, ¶ 3). Moreover, Plaintiff has stated under penalty of perjury that on July 24, 2006 (prior to his appeal being denied at the first level), he was interviewed by Sergeant Morales. (ECF No. 61-1, p. 16). During the interview, Sergeant Morales told Plaintiff that he had spoken with Defendant, and that Defendant provided him with a copy of the paging system procedures. (Id.). After the interview with Plaintiff, Sergeant Morales denied Plaintiff's appeal at the first level of review. (Id.).

Plaintiff has also submitted circumstantial evidence that Defendant was the person interviewed by Sergeant Morales. For example, Plaintiff has submitted evidence that, during the relevant time period, Defendant was the only staff member to approve or sign any legal copying request submitted to the Facility IV C library by Plaintiff. (ECF No. 61-1, p. 15).

Additionally, in June of 2006, when Plaintiff wanted a copy of the 2005 paging system memorandum, he requested it from Defendant, and Defendant provided it. (Id. at 16). Finally, it is undisputed that Defendant responded to Plaintiff's appeal regarding the lost habeas petition at the informal level. Plaintiff's Statement of Undisputed Fact ("PUF") 48. As Sergeant Morales interviewed someone he could ask about Plaintiff's copy request, as well as someone who had a copy of the relevant procedures, this is at least some evidence that the librarian interviewed by Sergeant Morales could have been Defendant.

Accordingly, viewing all evidence in the light most favorable to Plaintiff, the Court finds that there is sufficient evidence to create a genuine dispute of fact as to whether Defendant was the Legal Librarian referred to in Sergeant Morales's response to Plaintiff's appeal.

As to Defendant's contention that he was not sufficiently involved in Plaintiff's habeas case being dismissed, the Court finds that there are genuine disputes of material regarding this as well. It is undisputed that Plaintiff submitted his request for a copy of his habeas petition according to the process outlined in a 2005 memorandum authored by Defendant. PUF 40. It is also undisputed that Plaintiff did not receive a copy of his habeas petition after submitting it for copying on May 23, 2006. PUF 41. Plaintiff has also submitted evidence that his copy request, as well as his habeas petition, were received by Defendant on May 23, 2006. (ECF No. 61-1, p. 29).

Taking Plaintiff's evidence as true and viewing it in the light most favorable to Plaintiff, despite receiving Plaintiff's properly filed copying request, and despite knowing that Plaintiff needed the copy for legal proceedings because he responded to Plaintiff's appeal at the informal level (ECF No. 56-5, p. 22; PUF 48), when Defendant was interviewed by Sergeant Morales he told Sergeant Morales that he had not received Plaintiff's documents. He also provided Sergeant Morales the paging system procedures from 2004, not 2005. PUF 54. Apparently relying on the lie told by Defendant, as well as the incorrect paging system procedures provided by Defendant, Sergeant Morales denied Plaintiff's appeal, stating "[y]ou did not follow the proper procedure on sending your legal documents to the Law Library."

(ECF No. 56-5, p. 24). This appeal was relied on by the federal court when it dismissed Plaintiff's habeas petition as untimely. DUF 30. Based on this evidence, a reasonable jury could conclude that Defendant's actions led to Plaintiff's habeas case being dismissed, and thus to the violation of Plaintiff's right to access the courts.

As to Defendant's allegation that "Sergeant Morales was the staff member who indicated that Plaintiff did not follow the proper procedure in sending his legal documents to the law library (DUF 18), and it was *that* statement, and not any statement by Defendant Figueroa, that the habeas court relied upon in dismissing Plaintiff's petition in December 2008," (ECF No. 56-2, p. 7), the Court finds that there is a genuine dispute of material fact regarding this allegation. Taking Plaintiff's evidence as true, and viewing the evidence in the light most favorable to Plaintiff, Sergeant Morales relied on the inaccurate information provided by Defendant in responding to Plaintiff's appeal, and was in effect relaying information provided by Defendant.

Accordingly, based on the foregoing, the Court finds that there is a genuine dispute of material fact as to whether Defendant was responsible for preventing Plaintiff from accessing the courts.

### B. Qualified Immunity

As the Court has found that there is a genuine dispute of material fact as to whether Defendant was responsible for preventing Plaintiff from accessing the courts, the Court turns to Defendant's argument that he is entitled to qualified immunity. In determining whether a defendant is entitled to qualified immunity, the Court must decide (1) whether the facts shown by plaintiff make out a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct. Pearson, 555 U.S. at 232.

The Court finds that, viewing all evidence in the light most favorable to Plaintiff, and taking his evidence as true for purposes of this motion, Plaintiff has made out a violation of his constitutional right to access the courts, and this right was clearly established at the time of Defendant's conduct.

As analyzed above, the facts shown by Plaintiff make out a violation of his

constitutional right to access the courts. Thus, the Court turns to whether Defendant's conduct violated a right that was clearly established at the time of Defendant's conduct.

Defendant argues that he is entitled to qualified immunity because "[a] reasonable library technical assistant in Defendant Figueroa's position would not have known that responding to an appeal inquiry in July 2006 could possibly lead to the dismissal of a habeas petition in December 2008. Nor is there any case law that suggests that inadvertently losing an inmate's legal document could lead to an access-to-courts claim." (ECF No. 56-2, p. 9). The Court does not find these arguments persuasive.

Plaintiff has a "'fundamental constitutional right of access to the courts.'" Lewis, 518 U.S. at 346 (quoting Bounds, 430 U.S. 817 (1977)); Phillips v. Hust, 477 F.3d at 1075, overruled on other grounds by Hust v. Phillips, 555 U.S. 1150.

On March 21, 2017, Judge Ishii denied Defendant's motion to dismiss. (ECF No. 41). In doing so, Judge Ishii relied on Lewis, which was decided before Defendant's conduct:

> In his objections, Defendant claims that Plaintiff has failed to state an access to the courts claim because Defendant personally did not submit a false statement to the habeas court—rather it was Sergeant Morales who relayed Defendant's allegedly false statement to the habeas court, which was relied on in dismissing Plaintiff's habeas petition.
>
> This Court agrees with the Magistrate Judge that Plaintiff's complaint sufficiently pleads a causal connection between Defendant's actions (i.e., losing Plaintiff's habeas petition and then falsely claiming that Plaintiff failed to send it to the law library), and Plaintiff's injury (dismissal of Plaintiff's federal habeas petition as untimely and denial of equitable tolling based on the false statement that Plaintiff contributed to losing his habeas petition), regardless of whether Defendant himself filed a statement with the court or whether another prison officer filed Defendant's statement with the court. What matters is that the habeas court relied on Defendant's false statement in dismissing Plaintiff's habeas petition. Plaintiff's First Amended Complaint, which must be taken as true at this stage, alleges "[b]ased on the written and oral statements made by Defendant P. Figueroa . . . , the Court granted the 'motion to dismiss' Plaintiff's petition." (ECF No. 20, at p. 13). If true, this allegation, combined with Plaintiff's other allegations, satisfies the elements of an access to

14

> the courts claim by pleading that "a nonfrivolous legal claim has been frustrated or was being impeded." Lewis v. Casey, 518 U.S. 343, 353 (1996).

(ECF No. 41, p. 2).

"Moreover, it does not require sophisticated 'legal scholarship' to know that a plaintiff's access [to] the courts could be hindered seriously by an inability to make multiple, accurate copies of legal documents." Allen, 48 F.3d at 1089 (denying the defendants' claim to qualified immunity on an access to courts claim where the defendants' denial of photocopying services resulted in a state court returning Plaintiff's "second petition for post-conviction relief because he had not enclosed multiple copies."). See also Gluth v. Kangas, 951 F.2d 1504, 1510 (9th Cir. 1991) ("Litigation necessarily requires some means of accurate duplication because the court and the parties need to refer to the same documents.").

Accordingly, it was clearly established at the time of Defendant's conduct that interfering with a prisoner's attempts to make copies could constitute a violation of that prisoner's right to access the courts. And here, taking Plaintiff's evidence as true and viewing it in the light most favorable to Plaintiff, Defendant's interference with Plaintiff's attempts to make copies combined with Defendant's submission of a false statement to Sergeant Morales claiming that Plaintiff had failed to follow procedures led to Plaintiff's federal habeas case being dismissed and Plaintiff being denied his constitutional right to access to the courts.

Thus, Plaintiff has made out a violation of his constitutional right to access the courts, and this right was clearly established at the time of Defendant's conduct. Therefore, the Court finds that Defendant is not entitled to qualified immunity at this stage in the proceeding.[3]

## IV. CONCLUSION AND RECOMMENDATION

The Court has found that there is a genuine dispute of material fact as to whether Defendant was responsible for preventing Plaintiff from accessing the courts. The Court has also found that Defendant is not entitled to qualified immunity at this stage in the proceeding.

Accordingly, IT IS HEREBY RECOMMENDED that Defendant's motion for summary

---

[3] This denial should be without prejudice to Defendant bringing a post-trial motion based on qualified immunity to the extent facts are established at trial that would support such immunity.

judgment be DENIED.

These findings and recommendations are submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within twenty-one (21) days after being served with these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within seven (7) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **August 3, 2018**

/s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE